IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARIA DE LOS ANGELES GONZALEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| GULFQUEST, LP | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMAND |

## PETITIONER'S ORIGINAL COMPLAINT

### INTRODUCTION

Petitioner Maria De Los Angeles Gonzalez ("Gonzalez") files this lawsuit against her previous employer, Defendant GULFQUEST, LP[1], ("GULFQUEST") alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et. seq. and the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2615.

As alleged with greater specificity in paragraphs five through twenty-eight of this Complaint, Petitioner complains that due to an injury that resulted in a traumatic brain injury, Petitioner requested leave and accommodations from Defendant, her employer. Although Petitioner provided Defendant with clear medical documentation of the injury and symptoms, Defendant failed to discuss in good faith the accommodations which could be provided. Further, after agreed accommodations were provided, Defendant failed to comply with its promised accommodations by either failing to provide such accommodations (e.g. written instructions and

---

[1] Petitioner believed her employer, based on employment material and insignia, to be CIGNA. However, in response to the EEOC, Defendant represented that Petitioner's employer was apparently a subsidiary of CIGNA. Based on such representation, Petitioner has brought this suit against the above-named Defendant.

timely submission of written training material), but also changed the conditions and tasks of Petitioner's employment without further engaging in the accommodation process. Petitioner complained to her supervisors about disability discrimination and retaliation on several occasions. With no response or relief, Petitioner complained to Defendant's "employee relations" program. Seventeen (17) days later, Defendant terminated Petitioner's employment. In a repeating and continuing pattern, Defendant either failed to provide the accommodations, partially and inadequately gave accommodations, and gave and removed such accommodations without regards to Petitioner's legitimate disability needs. Further, Defendant failed to comply with the FMLA in that it failed to offer Petitioner the same or equivalent position she had when she returned from leave, but also discriminated against Petitioner for availing herself to FMLA leave. Through this suit, Petitioner seeks relief for violations of her rights under the law.

## JURISDICTION AND VENUE

1. This is a civil action brought pursuant 42 U.S.C. § 12101 et. seq. ("ADA") and 29 U.S.C. § 2615 ("FMLA"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is proper in the Western District of Texas under 28 U.S.C. § 1402(b) because the events giving rise to these claims occurred in this judicial district.

## PARTIES

3. Petitioner Maria De Los Angles Gonzalez is a natural person and a resident of Hidalgo County, Texas, and who was employed by Defendant.

4. Defendant GULFQUEST, LP is a Limited Partnership organized under the laws of Texas located in Hidalgo County, Texas, and, upon information and belief, a subsidiary and/or

connected entity with CIGNA.  Defendant may be served through its registered agent, CT Corporation System at 1999 Bryan St. Ste 900, Dallas, Texas 75201.

## STATEMENT OF FACTS

5.  Ms. Gonzalez Petitioner, was a former employee of Defendant.

6.  Mr. Gonzalez began her employment with Defendant on or about March 2, 2015, and was employed as a Nurse Case Manager

7.  In March 2017, Petitioner was injured and suffered a traumatic brain injury.  Ms. Gonzalez timely informed her employer of such injury.

8.  Such injury resulted in Petitioner having to take leave and having continued, persistent and chronic injury and symptoms including concussion, nausea, dizziness, migraines and headaches, vertigo, lumbar and neck pain, occasional faintness, memory loss, ear pain, hearing loss, hyperacusis, fluid in the ear, numbness of face and hands, stomach problems, and symptoms of post-concussion syndrome (e.g. sensitivity to light, sensitivity to motion, blurred vision, imbalance, clumsiness, excessive fatigue).

9.  Prior to her injury, Ms. Gonzalez was an exemplary employee who received performance based bonuses with good performance reviews.

10.  Upon here injury and diagnosis, Ms. Gonzalez attempted to engage in good faith negotiation to find accommodations that would allow Ms. Gonzalez to continue her employment and enjoy the benefits of her employment with reasonable accommodations.  Ms. Gonzalez's medical provider recommended a return to work with "light duty" and, subsequently "50% reduction in activity level".

11. Rather than engage in a good faith and genuine back and forth to determine the proper accommodation, Defendant instead placed the burden on Ms. Gonzalez, and her medical providers: to specifically explain and justify the precise meaning of "50% reduction in activity level".

12. Such repeated demand for specificity unreasonably delayed the required informal discussion period to find adequate accommodations and placed undue burden on Ms. Gonzalez who, suffering from her injury and dealing with her significant change of life circumstances, to continue to request medical appointments (which were often not immediately available) to try to provide Defendant its internally mandated required sufficient proof of accommodation.

13. After a much delayed back and forth, Defendant finally provided certain accommodations with Petitioner, including, written instructions and providing in writing training material, allowed time-off for medical appointments, and eventual move to the "strike team" that would replace her duties and number of clients in connection with the "census".

14. However, after such accommodations, Defendant began either ignoring or removing the conditions of accommodation. For example, Defendant failed to provide instructions in writing and, when Ms. Gonzalez requested instructions and/or corrections in writing, her supervisors blatantly refused to do so. Also, Ms. Gonzalez was not timely given training material in writing and was castigated when she missed training due to her required medical treatment. Ms. Gonzalez' duties on the strike team were also changed and she ended up having as much, and in fact more, clients in connection with her census than before she received the accommodations.

15. Defendant alternatively (and perhaps concurrently) placed Ms. Gonzalez on short term disability and/or FMLA leave.

16. Further, during this time, Ms. Gonzalez had documented and acknowledged problems with her work provided equipment (laptop computer) which rendered her ability to do her work extremely difficult and, at times, impossible. While some of Defendant's technical support staff were helpful in attempting to remedy such problems, Defendant as a whole, including Ms. Gonzalez's supervisor,s were not accommodating.

17. Considering her changing duties, Defendant's failure to follow accommodations, and her ongoing computer problems, Ms. Gonzalez was not afforded reasonable accommodations to do her job.

18. Further, Defendant failed to coordinate Ms. Gonzalez's FMLA leave and disability based leave in that Defendant penalized Ms. Gonzalez for having to take leave for medical issues and appointments.

19. At some point, Defendant wanted to reassign Ms. Gonzalez to a "part-time" position, with such positions attendant reduction in pay and benefits. In so doing, Defendant failed to reasonably accommodate Ms. Gonzalez and instead desired to solve the problem by basically putting Ms. Gonzalez, a worker with a bona fide disability, on a job path to eventual separation of Ms. Gonzalez from Defendant's workforce. Further, Defendant's offer of such position, when Ms. Gonzalez could do the essential functions of her job with reasonable accommodation, was in violation of the FMLA in that it was not a similar position to her current job.

20. Defendant began to closely document all perceived deficiencies with Ms. Gonzalez's work performance even though her conditions of employment changed and did not comply with the accommodations offered.

21. On or about June 11, 2018, after previously complaining about the lack of accommodations and disability discrimination to her supervisor, Ms. Gonzalez formally complained to Defendant's internal discrimination grievance procedure.

22. Defendant also improperly disclosed the extent and nature of Ms. Gonzalez's injury and disability, and other medical information of Ms. Gonzales', to her co-workers. For example, at one meeting when Ms. Gonzalez was beginning her work in the "strike team", her manager, Ms. Villarreal in a group meeting told Ms. Gonzalez, including Ms. Gonzalez's co-workers, that "you have been getting migraine headaches, and that's why you have been off. We all get headaches."

23. Sometime between June 15, 2018 and June 27, 2018, Defendant made the decision to terminate Ms. Gonzalez. Ms. Gonzalez was informed of her termination on or about June 27, 2018.

24. Symbolic of how Defendant considered Ms. Gonzalez' disability and FMLA complaint, and perhaps symptomatic of how it treats similar employees, Ms. Gonzalez was contacted a good time after her termination by Defendant's grievance department to further discuss her complaint.

25. At all times, Petitioner remained ready and willing to fully perform her jobs with her requested reasonable accommodations.

26. Upon information and belief, Defendant filled Ms. Gonzalez's position with a person who was not disabled, or perceived as disabled, and who was not placed on FMLA leave similar to Ms. Gonzalez..

27. Ms. Gonzalez timely complained of Defendant's unlawful conduct to the EEOC, and was issued a right to sue. This suit is timely brought.

28. As a result of Defendant's wrongful actions, Mr. Gonzalez has suffered loss of wages and benefits, mental anguish and suffering, and attorneys' fees in bringing this matter.

## CAUSES OF ACTION

Disability Discrimination, Retaliation and Harassment

29. Petitioner re-alleges and incorporates by reference paragraphs 5 through 28 above.

30. Petitioner was a person with a disability and/or regarded as disabled by Defendant as defined by the ADA.

31. Petitioner was entitled to reasonable accommodations

32. Petitioner was discriminated against by Defendant because of her disability, and Defendant did not provide Petitioner with reasonable accommodations.

33. Petitioner was qualified for her position of employment, and, with reasonable accommodations, could perform all of the core functions of here employment.

34. The accommodations she requested were cost-effective, readily available, shown to have worked, and reasonable.

35. Defendant replaced Petitioner with, and Petitioner was treated less favorably than, a non-disabled person.

36. Due to her disability and request for accommodations, Petitioner was subjected to unwelcome harassment which affected her conditions of employment.

37. Defendant knew of such harassment but failed to take prompt, remedial action.

38. Petitioner complained of her discrimination to her employer, both to her supervisor and through Defendant's own internal grievance procedure.

39. Defendant subsequently terminated Ms. Gonzalez's employment.

40. Because of the actions of Defendant, Petitioner suffered damages within the jurisdictional limits of this court.

## FMLA Discrimination and Retaliation

41. Petitioner re-alleges and incorporates by reference paragraphs 5 through 28 above

42. Petitioner was an eligible employee as defined by the FMLA who was placed on leave pursuant to the act.

43. Petitioner was treated less favorably than other employees who had not taken leave under the FMLA.

50. Because of the actions of Defendant, Petitioner suffered damages within the jurisdictional limits of this court.

## Damages

51. As a direct and proximate result of Defendant's conduct, Petitioner has suffered injuries and damages.

52. Petitioner seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53. Petitioner seeks additional equitable relief as may be appropriate such as reinstatement, promotion, back pay, front pay, and court costs.

54. Petitioner seeks reasonable attorney's fees and costs including reasonable expert fees.

55. Petitioner seeks pre and post judgment interest at the maximum rate allowable by law.

56. Petitioner seeks payment of all medical expenses incurred that would have been covered under the employment health plan Petitioner participated in while employed, and all

out-of-pocket medical costs incurred by Petitioner due to not participating in such plan due to her termination.

57.     Petitioner seeks punitive damages to the extent Defendant acted with malice or reckless indifference.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Petitioner, and for such other and further relief to which Petitioner may be justly entitled.

 /s/ Juan M. Gonzalez
**Juan M. Gonzalez**
Texas Bar No. 24002158
**LAW OFFICE OF JUAN M. GONZALEZ**
8918 Tesoro Dr., Suite 575
San Antonio, Texas  78217
(210) 587-4002 Telephone
(210) 587-4001 Fax
jgonzalez@mgo-law.com
**ATTORNEY FOR Petitioner**